# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 CR 923 | **DATE** | FEB 0 3 2003 |
| **CASE TITLE** | *United States of America v. Joseph Miedzianowski* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Nunc Pro Tunc as of January 24, 2003. For the reasons set forth in the attached Memorandum and Order, this Court DENIES Defendant Miedzianowski's Motion for a New Trial and Motion for Acquittal, and OVERRULES his Objections to the Presentence Report. It is so ordered.

(11) ⚓ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

RTS   courtroom deputy's initials

number of notices

FEB 06 2003 date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

804

U.S. DISTRICT COURT
03 FEB -6 PM 8: 05
FILED-ED TO

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,     )
     )
     )     **Hon. Blanche M. Manning**
v.     )
     )     **98 CR 923**
JOSEPH MIEDZIANOWSKI     )
     )

DOCKETED

FEB 0 6 2003

## MEMORANDUM AND ORDER

This matter comes before the Court for the sentencing of Defendant Joseph
Miedzianowski. For the reasons set forth below and in open court on January 24, 2003, this
Court DENIES Miedzianowski's Motion for a New Trial and Motion for Acquittal and
OVERRULES Miedzianowski's Objections to the Presentence Report [794-1, 797-1] and
sentences Miedzianowski to a term of imprisonment of life plus five years.

A complete summary of the sixth superseding indictment ("the Indictment") and the facts
of this case are contained in this Court's prior opinions, and therefore, the Court will only briefly
review the facts of this case. The Indictment alleged that Miedzianowski, a former Chicago
Police Officer, and Co-Defendants Mohamed Omar, Alina Lis, Omar Feliciano, and Lissett
Rivera, conspired with others to commit acts of racketeering and to distribute narcotics. The
Indictment contained 14 counts. Count 1 charged Miedzianowski and Omar with racketeering
conspiracy, in violation of 18 U.S.C. § 1962(d). Count 2 charged Miedzianowski and the other
Defendants with drug conspiracy, in violation of 18 U.S.C. § 846. As for Counts 3-14,
Miedzianowski was the only Defendant who went to trial on these Counts. At the conclusion of
the Government's case in chief, it dismissed Counts 3-6. Counts 7-14 were subsequently
renumbered as Counts 3-10.

804

After a 13 week trial, the jury found Miedzianowski guilty on all remaining counts contained in the Indictment.

After his conviction, the United States Probation Office ("Probation") completed a Presentence Investigation Report ("PSI"). Using the 2001 edition of the United States Sentencing Guidelines ("the Guidelines"), Probation calculated Miedzianowski's total offense level as a 46. The Court will briefly summarize the calculations to which Miedzianowski has stated an objection.

For Count 1, pursuant to section 2E1.1, Probation was required to give Miedzianowski a base offense level of 19 unless the base offense level for the underlying racketeering activity is greater. Where there is more than one underlying offense, Application Note 1 to section 2E1.1 requires that each underlying offense be treated as if contained in a separate count. Pursuant to section 3D1.1, Probation grouped all of the distribution and conspiracy to distribute offenses and counts together to determine the base offense level. Pursuant to section 2D1.1(1), Probation found that Miedzianowski had a base offense level of 38 for Count 1 on the grounds that he possessed with intent to distribute over 150 kilograms of cocaine and over 1.5 kilograms of cocaine base ("crack"). Probation also assessed Miedzianowski an enhancement of: (1) 4 points for his role in the offense, under section 3B1.1(a); (2) 2 points, pursuant to section 3B1.3, for abuse of a position of trust; and (3) 2 points for obstruction of justice, pursuant to 3C1.1 . Accordingly, Probation calculated Miedzianowski's total offense level as a 46.

Miedzianowski has objected to Probation's base offense level calculation on the grounds that the amount of drugs was not sufficiently established and to the enhancements for role in the offense and obstruction of justice.

2

**ANALYSIS**

Presently before this Court are Miedzianowski's: (I) Motion for a New Trial; (II) Motion for Acquittal; and (III) Objections to the Presentence Report. The Court will address each of these motions in turn.

## I. Rule 29 Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c) provides, in pertinent part, that "[i]f the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period." Under the plain language of Rule 29(c), a court may not extend the time for filing a motion to acquit unless the extension is granted within the 7-day period. See Carlisle v. United States, 517 U.S. 416, 421 (1996) (stating that "[t]here is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error"); United States v. Boyd, 172 F.R.D. 363, 365 (N.D. Ill. 1997) ("[i]f the seven days pass, the district court may not grant an extension of time"); Fed. R. Crim. Proc. 45 ("the court may not extend the time for taking any action under Rule 29, 33, 34, and 35, except to the extent and under the conditions stated in them").

Here, the jury returned the guilty verdict on April 26, 2001. This Court denied Miedzianowski and the other Defendants' initial motions for acquittal and for a new trial on April 16, 2002. Because Miedzianowski did not seek an extension of time, this Court is without

jurisdiction to entertain this motion and thus DENIES Miedzianowski's Motion for a Judgment of Acquittal.

## II.     Rule 33 Motion for a New Trial

Miedzianowski also filed a belated motion for a new trial. Like Rule 29, Rule 33 has a strict 7 day time limit, Fed. R. Crim. Proc. 45, unless the motion is "grounded on newly discovered evidence ." Fed. R. Crim. Proc. 33(b)(2). In considering a Rule 33 motion based on newly discovered evidence, the court must "exercise great caution" particularly where the case was tried before a jury. <u>United States v. Kamel</u>, 965 F.2d 484, 490 (7th Cir. 1992). To prevail on a Rule 33 motion, the defendant must "demonstrate" that the newly discovered evidence: (1) came to his knowledge after the trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. The filing of affidavits which undermine the witnesses' credibility by stating that the witnesses lied at trial are merely impeaching and not sufficient to sustain a Rule 33 motion. <u>See id.</u> at 494.

Here, Miedzianowski's motion is completely devoid of any argument as to why his alleged newly discovered evidence meets the above four part standard. Nevertheless, this Court will briefly examine Miedzianowski's alleged newly discovered evidence to determine if it warrants a new trial under Rule 33.

Miedzianowski offers the proffer interview of Co-Defendant Galligan as newly discovered evidence which would lead to an acquittal at trial. Galligan, Miedzianowski's former partner, did not testify at this trial and subsequently pled guilty. Contrary to Miedzianowski's contention, this proffer does not exculpate him from illegal conduct which was shown at trial.

4

Instead, Galligan admits the following criminal acts which were also proven at trial: (1) delivering three grams of crack cocaine to Co-Defendant Rico Passley at the request of Miedzianowski; (2) concealing Miedzianowski's theft of one kilogram of cocaine during the execution of a search warrant; and (3) stealing drugs and giving Co-Defendant Nelson Padilla bond slips to make it look as if he had been arrested. Consequently, this Court finds that this evidence is not exculpatory and would not lead to an acquittal at a new trial.

Additionally, Miedzianowski has submitted a letter from Co-Defendant Nelson Padilla to Co-Defendant Mohamed Omar telling Omar that he can cut a deal with the Government by giving them names of Chicago Police Officers involved in illegal conduct. This letter, however, is not newly discovered. It was turned over to Miedzianowski's counsel by Omar's counsel on January 22, 2001, prior to the trial of this case. Also, at most, this letter could only be used to impeach some of the government's witnesses, which is not sufficient to warrant a new trial. Finally, given the overwhelming evidence in the case, this Court does not see how this letter could exculpate Miedzianowski from the illegal conduct which was proven at trial.

Miedzianowski has also submitted several affidavits from inmates at the Metropolitan Correctional Center in Chicago which allege generally that these inmates heard other inmates state that they heard that the Government's witnesses were lying. Besides from being of dubious sources, these affidavits are all double hearsay and would not be admissible at a new trial. Even if these affidavits were admitted, at most they could only be used to impeach some of the Government's witnesses, which is not sufficient to warrant a new trial.

Accordingly, this Court finds that the alleged newly discovered evidence does not meet the four part test set forth above, and the Court thus DENIES the motion for a new trial.

5

## III.    Objections to the PSI

Miedzianowski's two attorneys filed separate objections to the PSI.  These objections can be categorized as objections to: (A) certain factual findings in the PSI; (B) calculation of the quantity of drugs; (C) enhancement for obstruction of justice; and (D) enhancement for his role in the offense. The Court will address each of these objections in turn.

### A.    The PSI's Factual Findings

Miedzianowski contends that many of the facts in the PSI are based on unreliable evidence from witnesses who did not testify at trial and from hearsay.

A defendant has a "fundamental" right to "be sentenced on the basis of accurate information." United States v. Scalzo, 716 F.2d 463, 466 (7th Cir. 1983).  When a defendant disputes factual allegations in the PSI, the court must either make a finding on the disputed matter or make a determination that such a ruling is unnecessary because the court will not consider the contested allegations in determining the sentence under the Guidelines.  Fed. R. Crim. Proc. 32(i)(3)(B); United States v. Slaughter, 900 F.2d 1119, 1120 (7th Cir. 1990).

When a defendant contests an allegation contained in the PSI, the defendant must "come forward with evidence showing that the challenged fact is untrue." United States v. Lanterman, 76 F.3d 158, 161 (7th Cir. 1996).  Simply submitting "self-serving affidavit[s]" is not sufficient to show that the facts in the PSI are untrue.  Id.

In resolving a contested factual matter in the PSI which is important to sentencing, "the court may consider relevant information without regard to admissibility under the rules of evidence applicable at trial, provided the information has a sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).  See also  Lanterman, 76 F.3d at 160-61.

Here, Miedzianowski contends the PSI contains unreliable facts which were derived from witnesses of dubious character who did not testify at trial and from hearsay. For example, Miedzianowski argues that the Court should not give any credibility to facts in the PSI derived from statements by Nelson Padilla, a Co-Defendant who pled guilty but did not testify in this case. In support of this contention, Miedzianowski has submitted to this Court: (1) a letter from Padilla to Co-Defendant Mohamed Omar telling Omar that he can cut a deal with the Government by giving names of Chicago Police Officers involved in illegal conduct; and (2) an affidavit from an inmate at the Metropolitan Correctional Center in Chicago ("MCC") which states that a correctional officer told the inmate that Padilla told the officer that he and the co-defendants who testified at trial lied about Miedzianowski's criminal conduct.

After reviewing these documents, the Court finds that they do not make Padilla's statements so unreliable as to not be credible. Nevertheless, even assuming that Padilla's statement lacked sufficient credibility, this Court, as explained below, does not rely on Padilla's statement in determining Miedzianowski's sentence under the Guidelines.

Similarly, Miedzianowski argues that the Court should not give any credibility to facts in the PSI derived from statements by: (1) Co-Defendant Mohamed Omar, given after trial; (2) Misko Jovanovich, an inmate who alleged that Miedzianowski planned to escape from the MCC; and (3) Co-Defendant Feliciano, who did not testify at trial. As explained below, this Court likewise does not rely on these statements in determining Miedzianowski's sentence under the Guidelines.

Miedzianowski also contends that factual findings based on the testimony of Co-Defendants Joseph DeLeon, Fred Rock, and Juan Martir, all of whom pled guilty and testified at

trial, are unreliable. These Defendants all testified at trial and were subject to extensive cross-examination. Miedzianowski has not put forth any new evidence which would even suggest that their testimony was not of sufficient credibility. Therefore, as to the trial testimony of these Defendants, this Court, which observed these witnesses at trial, finds that their testimony has a sufficient indicia of reliability to support its probable accuracy. Moreover, the Court notes that much of what these Defendants testified to was corroborated by other evidence, including Miedzianowski's own words on the Title III tapes, all of which was apparently accepted by the finders of fact (the jury).

Accordingly, except for the trial testimony of Joseph DeLeon, Fred Rock, and Juan Martir, this Court does not rely on the contested portions of the PSI which Miedzianowski contends come from unreliable sources.

## B.    Quantity of Drugs

Miedzianowski contends that there is insufficient credible evidence to support Probation's calculation of a base offense level of 38 under section 2D1.1(1) on the grounds that Miedzianowski possessed with intent to distribute over 150 kilograms of cocaine and over 1.5 kilograms of cocaine base.

At sentencing, the Government is required "to prove the quantity of drugs involved in a transaction by a preponderance of the evidence." Lanterman, 76 F.3d at 160. Each defendant involved in the conspiracy to distribute drugs is accountable for the drugs "he actually distributed, plus any additional amount reasonably foreseeable to him. Id.

Here, pursuant to section 2D1.1(1), Probation assigned Miedzianowski a base offense level of 38. Section 2D1.1(1) provides for a base offense level of 38 if the defendant is found to be accountable for 1.5 kilograms or more of cocaine base or over 150 kilograms of cocaine.

After reviewing the PSI, the trial testimony of Juan Martir, Joseph DeLeon, and Frankie Figueroa, and the Title III tapes, this Court finds that there is sufficient evidence to support Probation's finding that Miedzianowski possessed with intent to distribute over 150 kilograms of cocaine and over 1.5 kilograms of cocaine base. For example, Martir testified that from the summer of 1996 to February of 1998, Miedzianowski purchased kilogram quantities of cocaine and cocaine base. Figueroa testified that while working for Miedzianowski, Martir, and Omar, he "cooked" 350 kilograms of cocaine powder into crack. DeLeon testified that from the fall of 1997 until February 1998, he purchased half kilogram quantities of crack from Miedzianowski every seven to ten days.

Accordingly, this Court DENIES Miedzianowski's objection as to the quantity of drugs.

## C. Obstruction of Justice

Miedzianowski also objects to Probation assessing him a 2 level enhancement for obstruction of justice, pursuant to section 3C1.1. In making this determination, Probation listed the following instances of obstruction: (1) attempting to influence the testimony of Co-Defendant Martir by promising to render assistance for his pending case in Florida; (2) instructing Co-Defendant Feliciano to lie to the police; (3) telling Co-Defendant Padilla to lie to the police and to intimidate witnesses; and (4) planning to escape from custody and to hire someone to injure the prosecutor in this case. In its response to the objections, the Government also contends that

Miedzianowski obstructed justice by committing perjury on the stand in this case and by threatening Co-Defendant Yolanda Navarro and making promises to Co-Defendant Juan Martir.

Miedzianowski contends that the allegations from Feliciano and Padillo are unreliable and that the alleged escape attempt is derived from jailhouse informants at the MCC. As discussed above and stated in court at sentencing, pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B), this Court finds that it is unnecessary to discuss these contentions because the Court finds that it is proper to give Miedzianowski an enhancement for obstruction based on the other factual allegations which Miedzianowski is not contesting. Therefore, this Court will not consider these contested factual issues when determining whether an obstruction enhancement is proper.

Section 3C1.1 provides for a two level increase where:

(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense. . . .

Application Note 4 provides a "non-exhaustive list of examples of the types of conduct to which this adjustment applies," and includes "(a) "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness . . . directly or indirectly, or attempting to do so" and "(b) committing, suborning, or attempting to suborn perjury." While not every defendant who takes the stand in his own defense and is found guilty is liable for an enhancement, if the court makes "an independent factual determination" that the defendant lied, the court may properly enhance the sentence under section 3C1.1. United States v. Corn, 956 F.2d 135, 12 (7th Cir. 1992).

10

Here, after observing Miedzianowski's trial testimony and the testimony of Juan Martir, Joseph DeLeon, and Frankie Figueroa, and listening to the Title III tapes, this Court finds that there is sufficient evidence to support "an independent factual determination" that Miedzianowski committed perjury at trial. Miedzianowski testified that his conversations on the Title III tapes and interaction with Defendants was actually part of his legitimate police work and that he was planning on arresting Defendants at a future date. This testimony was rejected by the jury and contradicted by evidence presented at trial. Moreover, given the scope of the criminal conspiracy here, the Court finds it incredulous that neither the Chicago Police Department nor federal law enforcement agencies were aware of this alleged investigation.

Additionally, this Court finds that Miedzianowski unlawfully attempted to influence at least one witness. For example, in a taped conversation between Juan Martir, who was in custody at the MCC in Miami, and Miedzianowski in Chicago, Miedzianowski promised to get Martir a sentence reduction in his Miami case if he did not disclose his Chicago drug operation. Likewise, in a taped conversation with Yolanda Navarro, Miedzianowski threatened that he knew where she and Martir's children lived, and therefore, he was not worried about Martir disclosing Miedzianowski's criminal conduct to the authorities.

Accordingly, this Court finds that Probation properly enhanced Miedzianowski offense level by two points for obstruction of justice under section 3C1.1.

### D.    Role in the Offense

Miedzianowski also objects to Probation assigning him a four level increase for being a leader/organizer of the scheme pursuant to section 3B1.1(a), which states that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was

11

otherwise extensive, increase [the offense level] by 4 levels." Although the Guidelines do not

provide a precise definition of organizer or leader, Application Note 4 offers some guidance:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

See also United States v. Herrera, 878 F.2d 997, 1000 (7th Cir. 1989). The Background to

section 3B1.1, also provides that "[t]his section provides a range of adjustments to increase the

offense level based upon the size of a criminal organization (i.e., the number of participants in

the offense) and the degree to which the defendant was responsible for committing the offense,"

and "is included primarily because of concerns about relative responsibility." Section 3B1.1,

Background. In making a factual determination of whether a defendant is an "organizer" or

"leader" within the meaning of section 3B1.1, the sentencing court is required to "draw

inferences from a variety of data, including the information in the presentence report and the

defendant's statements and demeanor at the sentencing hearing." Herrera, 878 F.2d at 1000.

Here, after sitting through the trial of this case and carefully reviewing the evidence, this

Court finds that Miedzianowski was a leader/organizer of a criminal conspiracy which involved

five or more people. Miedzianowski exercised control of the operation, recruited members, and

threatened members to keep them in line. For example, numerous witnesses testified that

Miedzianowski acted as a mediator and de facto judge when the coconspirators got into disputes

over drug debts and prices. Likewise, before the coconspirators would rob and cheat each other,

they would seek Miedzianowski's approval. Miedzianowski recruited persons into the

conspiracy to supply and distribute drugs. In addition, as he did with Sam Castro, Miedzianowski instructed members of the conspiracy how to be successful drug dealers.

Accordingly, this Court finds that Probation correctly enhanced Miedzianowski's sentence for his role in the offense.

## CONCLUSION

For the foregoing reasons, this Court DENIES Defendant Miedzianowski's Motion for a

New Trial and Motion for Acquittal, and OVERRULES his Objections to the Presentence

Report. It is so ordered.

**ENTER**

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

**DATE:** *1-24-03*