**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>v. )<br> )<br>JOSEPH JEROME MIEDZIANOWSKI. )<br> )<br> ) | No. 98 CR 00923-1<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Joseph Jerome Miedzianowski's Motion for Relief under the First Step Act. Miedzianowski is currently serving a sentence of life plus five years for multiple counts of extortion, drug, and firearms offenses. Miedzianowski argues that he is eligible for a sentence reduction under § 404 of the First Step Act for a sentence of time-served, on the basis that the crack cocaine quantity necessary to support a life statutory maximum has been increased from 50 to 280 grams. Miedzianowski is eligible for relief under the First Step Act, however the Court denies his Motion for the discretionary factors detailed in 18 U.S.C. §§ 3553. (Dkt. 1134).

## BACKGROUND

As detailed at trial, Miedzianowski is a former Chicago Police Officer who recruited gang members and other arrestees to conspire in the trafficking of drugs and other criminal activity from the mid-1980s until December 16, 1998, when Miedzianowski and several of his co-conspirators were arrested. During this period, Miedzianowski participated in a conspiracy to traffic cocaine from Miami for distribution throughout the Chicago area. In addition to distributing cocaine base, Miedzianowski used his influence as a police officer to protect his co-conspirators, going so far as to interfere with police investigations, identify undercover officers, and provide firearms to his co-conspirators. Miedzianowski and his co-conspirators also engaged in the extortion of other drug

1

dealers by using his position as a Gang Crime Specialist to obtain fraudulent search warrants to take property from an individual.

On December 21, 2000, a federal grand jury returned a sixth superseding indictment charging Defendants Joseph Miedzianowski, Alina Lis, Omar Feliciano, Lissett Rivera, and others with various offenses related to the conspiracy. (Dkt. 388). The indictment charged Miedzianowski with conspiracy to distribute and to possess with intent to distribute more than 5 kilograms of cocaine, more than 50 grams of cocaine base, and unspecified quantities of heroin and marijuana, in violation of 21 U.S.C. § 846 (Count Two). (*Id.*). In addition, the indictment charged Miedzianowski with a Racketeer Influenced and Corrupt Organization Act ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One) (based on alleged racketeering acts that included the drug conspiracy alleged in Count Two); conspiracy to commit extortion, in violation of 18 U.S.C. § 1951 (Counts Three and Seven); extortion (Count Four); possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts Five and Twelve); using and carrying a firearm during and in relation to a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Six and Nine); distributing cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts Eight and Ten); wire fraud, in violation of 18 U.S.C. § 1343 (Count Eleven); possessing stolen ammunition, in violation of 18 U.S.C. § 922(j) (Count Thirteen); and illegally possessing a short-barreled rifle, in violation of 26 U.S.C. § 5861(d) (Count Fourteen).

Miedzianowski, Omar, Lis, Feliciano, and Rivera, proceeded to trial on January 31, 2001. (Dkt. 418). At the trial, the government presented the testimony of fourteen cooperating defendants among other witnesses, and published more than 250 telephone conversations intercepted pursuant to a Title III wiretap on two of Miedzianowski's home telephones, and

consensually-recorded calls between Miedzianowski and coconspirator Juan Martir, which originated from the Federal Detention Center in Miami, Florida.

After a thirteen-week trial, Miedzianowski was convicted on April 23, 2001, on all ten counts. (Dkt. 800 at 1). The probation officer assigned Miedzianowski a base offense level of 38 based on actual possession of more than 150 kilograms of cocaine and more than 1.5 kilograms of crack cocaine. (Dkt. 808 at 27). There were further enhancements for his role in the offense, abuse of trust, and obstruction, which resulted in a final offense level of 46 under criminal history category I. (*Id.* at 28–30). Therefore, Miedzianowski's total offense level was 46, which, even with a criminal history category I, was three levels above that necessary for a guideline range of life. (Dkt. 808 at 30, Dkt. 804 at 8).

On January 24, 2003, Judge Manning sentenced Miedzianowski to serve a term life imprisonment on Counts One and Two, a term of imprisonment of five years each on Counts Three, Four, Six, Seven, Eight, Nine, and Ten, to be served concurrently, and a term of imprisonment of five years on Count Five to be served consecutive to the life sentence imposed on Count Two. (Dkt. 800 at 4). Miedzianowski subsequently appealed to the Seventh Circuit, which affirmed Miedzianowski's conviction on direct appeal, and ordered a limited remand to determine whether the district court would have imposed the same sentence. *United States v. Rivera*, 136 Fed.Appx. 925, 926 (7th Cir. 2005) (unpublished). The district court responded to the appellate court's inquiry, saying that would impose the same sentence. *United States v. Feliciano*, 168 F. App'x 743 (7th Cir. 2006) (unpublished). The Court of Appeals then affirmed, finding that Miedzianowski's crimes justify the greatest non-capital sanction. Miedzianowski now moves for relief under the First Step Act.

## LEGAL STANDARD

Courts are generally not permitted to modify a previously imposed term of imprisonment, except as authorized by 18 U.S.C. § 3582(c)(1)(B), which provides that a court may modify previously imposed terms of imprisonment "to the extent otherwise permitted by statute . . . ." The applicable permitting statute in this case is § 404 of the First Step Act, which specifies that "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id.* § 404(b) (internal citation omitted). A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a) (internal citation omitted). However, even if a defendant's violation meets the definition of "covered offense," they are not automatically entitled to a reduction of sentence. Evaluation of a motion for a reduced sentence pursuant to the First Step Act is a two-step process that first asks whether the defendant is eligible, and therefore whether the court *may* reduce the sentence, and then asks whether the court, in its discretion *should* reduce the sentence. *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). Relief under the First Step Act is therefore discretionary, stating that "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c).

## DISCUSSION

### A. Eligibility

The Court first looks to whether Miedzianowski is eligible for a sentence reduction. Under the First Step Act, a defendant is eligible for a sentence reduction if they were sentenced for a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for

which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." First Step Act § 404(a). A defendant sentenced before August 3, 2010, and whose sentencing exposure would be different under Section 2 of the Fair Sentencing Act, is entitled to consideration for a reduced sentence. A defendant who was sentenced on or after August 3, 2010 is entitled to consideration for a reduced sentence: if (1) he committed his offense before August 3, 2010, (2) his sentencing exposure was affected by Section 2 of the Fair Sentencing Act, and (3) he was not sentenced (or later resentenced) in accordance with the Fair Sentencing Act.

Section 2 of the Fair Sentencing Act modified the statutory penalties for distribution or possession with intent to distribute crack cocaine under 21 U.S.C. § 841(a)(1) by increasing from 50 grams to 280 grams the amount of crack cocaine that would trigger a sentencing range of ten years to life, and by increasing from five to 50 grams the amount of crack cocaine that would trigger a sentencing range of five to 40 years. Fair Sentencing Act §§ 2(a)(1)-(2). Accordingly, the statutory penalty for 50 grams of crack cocaine was reduced from a previous range of ten years to life to a new range of five to 40 years. Miedzianowski was convicted of conspiring to distribute and to possess with an intent to distribute at least 50 grams of crack cocaine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), and therefore falls under the plain definition of "covered offense." (Dkt. 800 at 1–2).

The Government here acknowledges that eligibility under the First Step Act is based only on the defendant's statute of conviction, and not on actual amounts involved as determined in sentencing. (Dkt. 1177 at 18). This is a position that has been clarified in recent cases in this Circuit. *See Shaw*, 957 F.3d at 737 (holding that "a court needs to look only at a defendant's statute of conviction, not to the quantities of crack involved in the offense"); *see also United States v.*

*Cross*, 397 F. Supp. 3d 1184 (N.D. Ill. 2019) ("The use of the phrase 'statutory penalties' and the reference to §§ 2 and 3 of the Fair Sentencing Act drive home the point that the statutory offense at conviction, not facts found at a later stage such as sentencing, controls § 404 eligibility.").

Here, Miedzianowski's indictment and statute of conviction in regard to crack cocaine charged at least 50 grams. (Dkt. 800 at 1–2). The statutory penalties for this amount were modified by the Fair Sentencing Act in that 50 grams previously triggered a sentencing range of ten years to life, and now trigger a sentencing range of five to forty years. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii), (B)(iii). The finding in Miedzianowski's Pre Sentencing Report of an actual quantity of more than 1.5 kilograms of crack cocaine is correspondingly irrelevant for purposes of determining eligibility. *See Shaw*, 957 F.3d at 738-39.

Despite the Government's recognition of the principle illustrated by *Shaw*, it nonetheless argues that Miedzianowski remains ineligible for a sentence reduction by pointing to Miedzianowski's conviction of a multi-object conspiracy to distribute and to possess with an intent to distribute at least 5 kilograms of cocaine and at least 50 grams of crack cocaine. (Dkt. 1177 at 19). At the time of Miedzianowski's sentencing in 2003, both amounts triggered a mandatory minimum of ten years and a statutory maximum of life imprisonment. 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii) (Supp. 2002). While the Fair Sentencing Act of 2010 did modify the statutory penalties for crack cocaine by increasing the threshold for a sentence of ten years to life from 50 grams to 280 grams, it did not modify the statutory penalties for powder cocaine. Fair Sentencing Act § 2. Accordingly, the Government argues, Miedzianowski would have been subject to a sentence of ten years to life with or without the Fair Sentencing Act's modification of the penalties for crack cocaine, and therefore the statutory penalties for his violation were not

modified by the Fair Sentencing Act of 2010 and his conviction is not a "covered offense." (Dkt. 1177 at 21-22).

Where covered and non-covered offenses are grouped for an aggregate sentence, the existence of a single covered offense is a "threshold requirement of eligibility," and "[o]nce past that threshold, a court may consider a defendant's request for a reduced sentence, including for non-covered offenses that are grouped with the covered offenses . . . ." *United States v. Hudson*, 967 F.3d 605, 611 (7th Cir. 2020); *see also United States v. White*, 459 F.Supp.3d 1115, 1117 (N.D. Ill. 2020) ("So long as a defendant was convicted of 'a violation'—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief." (quoting *United States v. Jones*, No. 3:99-cr-264-6 (VAB), 2019 WL 4933578, at *9 (D. Conn. Oct. 7, 2019)). The *Hudson* court noted that where a covered crack cocaine offense exists, "the text of the First Step Act requires no more for a court to consider whether it should exercise its discretion to reduce a single, aggregate sentence that includes covered and non-covered offenses." *Hudson*, 967 F.3d at 610.

While acknowledging *Hudson*, the Government cites a non-precedential Seventh Circuit case as support for their claim that Miedzianowski is ineligible under the First Step Act. (Dkt. 1177 at 22). In *United States v. Johnson*, 830 F. App'x. 772, 773 (7th Cir. 2020), the defendant was convicted of conspiracy to distribute 5 kilograms of powder cocaine and 50 grams of crack cocaine, both of which triggered a sentencing range of ten years to life. Because of prior convictions, the defendant faced a statutory minimum of life imprisonment. *Id.* The district court denied the motion for reduced sentence on the grounds that the non-covered powder cocaine conviction carried a mandatory life sentence, and therefore the court had no discretion to reduce the sentence. *Id.* In affirming the denial, the Seventh Circuit noted that "regardless of whether

7

Johnson's conviction was for a covered offense, the district court lacked discretion to reduce his prison term." *Id.* However, the facts of Miedzianowski's sentence do not parallel this. The inclusion of a non-covered powder cocaine offense in Miedzianowski's aggregate sentence does not negate his eligibility for consideration under the First Step Act. Miedzianowski's crack cocaine conviction is a covered offense because the statutory penalties for that offense were modified by the Fair Sentencing Act, and as explained in *Hudson*, this is all that is required to meet the threshold for eligibility. *See Hudson*, 967 F.3d at 610.

### B. Discretionary Factors

Having established that Miedzianowski is eligible for consideration under the First Step Act, the Court turns to the discretionary factors laid out in 18 U.S.C. § 3553. This section specifies that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes for the sentence:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. §§ 3553(a)(2)(A)-(D). Additionally, the court should consider other factors such as "the nature and circumstances of the offense and the history of the defendant," the applicable sentencing range provided for in the sentencing guidelines, and "the need to avoid unwarranted sentence disparities" among similar defendants. 18 U.S.C. §§ 3553(a)(1), (4), (6).

Defendant's Supplemental Memorandum emphasizes Miedzianowski's positive post-sentencing disciplinary record, his age and reduced risk of recidivism, and the emotional impact of his continued incarceration on his family. (Dkt. 1148 at 9–12).

8

While Miedzianowski has taken steps to improve his life, the Court cannot ignore the seriousness of Miedzianowski's offenses over at least fifteen years across the City of Chicago and across state lines, the damage he inflicted on public safety and public trust, his perjury and threats toward witnesses and the prosecutor even after his arrest, and the risk of disparity with the sentences of his co-conspirators. (Dkt. 1177 at 23-26). The seriousness of Miedzianowski's crimes and the harm he inflicted on public safety and public trust weigh most heavily. Miedzianowski's direct role in the drug and gang activity impacted the health and safety of his community, including innocent citizens both across the city and across the country. The fact that Miedzianowski was a police officer who swore to uphold laws and protect his community only to trade upon the respectability such a position affords to further commit crimes only heightens the brazenness of his offense. Not to mention, even after he was caught, he engaged in perjury and threats toward witnesses who testified against him. Miedzianowski was no ordinary drug criminal.

In regard to post-sentencing rehabilitation, other courts in this District have noted that "[e]vidence of post-sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.'" *Mansoori,* 426 F.Supp.3d at 519 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). Miedzianowski has expressed contrition for his behavior according to his counsel and has expressed a desire for rehabilitation and to contribute positively to society. Miedzianowski notes that he has strong family support and has a limited prison disciplinary record, even before 2018 when the First Step Act came into effect.

Such factors are important to consider. The fact that Miedzianowski has taken steps to better his life is admirable. However, it cannot be overlooked that Miedzianowski managed to conceal his corruption over more than fifteen years as a police officer. During that time, as the

Government notes, he led a double-life and managed to deceive even those closest to him. He damaged numerous lives; not just his own. Nor is the fact that Miedzianowski had a limited criminal record before he was convicted of this years-long drug conspiracy dispositive. Miedzianowski was a police officer. The Court would assume most upstanding law enforcement officers would have a limited criminal record. Miedzianowski was able to evade investigation into his activities in part because of his status.

Miedzianowski also points to the fact that he is now in his late sixties, and the United States Sentencing Commission's findings that recidivism "begins to decline substantially at age fifty" and that "offenders who are released after the age of sixty, have the lowest rate of recidivism, at about 16 percent." Dkt. 1148 at 9; *see* UNITED STATES SENT'G COMM'N, RECIDIVISM AMONG FEDERAL DRUG TRAFFICKERS (2005). This must be contextualized both generally and in regard to Miedzianowski himself. According to the United States Sentencing Commission, only 1.3% of offenders were over age 60 at the time of their release. *Id.* Additionally, it is worth noting that Miedzianowski's own criminal activity continued well into his forties.

In regard to the risk of disparity with the sentences of his co-conspirators, the Government notes that many of them received sentences between fifteen and thirty years, despite being less culpable than Miedzianowski. Nelson Padilla, for example, was sentenced to 240 months, while Omar Feliciano was initially sentenced to 360 months and was eventually reduced to 180 months. Miedzianowski is asking for his sentence to be reduced to time-served, which is currently approximately 270 months. That Miedzianowski would receive in effect a similar sentence despite his higher culpability would hardly be just.

Finally, Miedzianowski's initial Pre Sentencing Report assigned him a base offense level of 38 based on actual possession of more than 150 kilograms of cocaine and more than 1.5

kilograms of crack cocaine. There were further enhancements for role in the offense, abuse of trust, and obstruction, which resulted in a final offense level of 46 under criminal history category I. Today, even with adjustments to the Drug Quantity Table of the current United States Sentencing Commission Guidelines Manual, Miedzianowski's base offense level for the same amounts would be 36. U.S. SENT'G GUIDELINES MANUAL § 2D1.1 (U.S. SENT'G COMM'N 2018). Assuming the same eight-level enhancement he originally received, his overall offense level today would be 44, still above the level 43 guideline range of life imprisonment. U.S. SENT'G GUIDELINES MANUAL ch. 5, pt. A (U.S. SENT'G COMM'N 2018). Miedzianowski's current time served is approximately 270 months, still near the top end of the guidelines range of 235-293 months for the significantly lower offense level 38 with a criminal history category I. USSG Ch.5, Pt.A.

In light of the above, Miedzianowski's age, good behavior, and family impact do not outweigh the significant factors that support a denial of his motion for a reduced sentence. As discussed, Miedzianowski's criminal behavior was extremely serious and harmed his community. The Court must also consider the need to promote respect for the law, as well as the principals of general deterrence. Even if Miedzianowski is truly remorseful, the Court must consider the need to deter others from similar conduct. Given the gravity of Miedzianowski's crimes, the Court is hesitant to grant him early release when doing so could negatively impact respect for the law. Finally, the Court has taken into consideration the nature and circumstances of the offense, the applicable sentencing range provided for in the sentencing guidelines, and the need to avoid unwarranted disparities among similar defendants and finds these factors weigh against early release. *See* 18 U.S.C. §§ 3553(a)(1), (2), (4), and (6).

## CONCLUSION

Miedzianowski is eligible for relief under the First Step Act because he was convicted of a "covered offense" under the Act. However, the Court denies his Motion for Relief (Dkt. 1134) under the discretionary factors detailed in 18 U.S.C. §§ 3553, namely due to the extremely serious nature of Miedzianowski's crimes.

_____
Virginia M. Kendall
United States District Judge

Date: July 7, 2021